AO 91 (Rev. 11/11) Criminal Complaint AUSA Alejandro G. Ortega (312) 353-4129



FILED
5/21/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GABRIEL GUERRA-MORFIN | CASE NUMBER: 25 CR 278<br><br>Ref. No. 22 GJ 683 **UNDER**<br><br>**SEAL** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about June 13, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 846 | Conspiracy to knowingly distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

*JAMES J. LEE* (signature)
JAMES J. LEE
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: May 21, 2025 *Jeannice W. Appenteng* (signature)
 *Judge's signature*

City and state: Chicago, Illinois Jeannice W. Appenteng, U.S. Magistrate Judge
 *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, JAMES J. LEE, being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for 13 years.[1] I am currently assigned to the DEA Chicago

---

[1] On September 1, 2016, Special Agent James J. Lee appeared before a Magistrate Judge in the Northern District of Illinois as the affiant on an application for a search warrant to search the first floor unit at 4601 South Albany, Chicago, Illinois. The Magistrate Judge issued the warrant and the DEA executed it the same day. During the evening of September 1, 2016, based on information regarding the execution of the warrant, SA Lee and an AUSA who had assisted with the warrant realized that the search warrant affidavit contained inaccurate information. The government notified the Magistrate Judge about the inaccurate information in the search warrant application, stating:

[P]aragraph 19 of the Affidavit submitted in support of the search warrant stated that "Agents saw De La TORRE exit his vehicle, enter through a gate door on 46th Street, and then enter the back door leading into the first floor of the Subject Premises." However, in fact, agents saw De La TORRE exit his vehicle, enter through a gate door on 46th Street [which was the courtyard gate door], and then disappear into the courtyard. Agents had surveillance on two visible doors to 4601 South Albany Ave. and believed that De La Torre went into the back door of 4601 South Albany Ave. that was not visible. In other words, the affidavit should have provided that agents believed that De La TORRE went into the back door based on the facts set forth above, rather than stating that they saw him enter that back door.

Paragraph 20 of the Affidavit further stated that: "At approximately 5:54 p.m., surveillance agents observed De La TORRE exit the back door of the Subject Premises, walk to the alleyway behind the Subject Premises …." That paragraph should have provided that agents observed De La TORRE exit the back *gate* door of the Subject Premises, not the back door of the Subject Premises.

After receiving this information, the Magistrate Judge told the government she would not have signed the warrant if the surveillance had been accurately described by the agent, and that she expected the U.S. Attorney's Office to make a disclosure regarding SA Lee if he were going to testify or be an affiant on future complaints or warrants.

Later in the investigation, agents observed the same subject enter and exit the back door that was described in the original affidavit, and the subject admitted that he did in fact reside in the unit described in the affidavit. A DEA Office of Professional Responsibility investigation did not conclude that SA Lee knowingly and intentionally provided false information, and he was issued a non-disciplinary letter of caution for inattention to duty.

Field Division and my responsibilities include the investigation of criminal violations of federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841(a)(1) and 846. I have also been involved in various types of electronic and physical surveillance, and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking. I have also received specialized training in the enforcement of laws concerning the activities of narcotics traffickers.

2. This affidavit is submitted in support of a criminal complaint alleging that Gabriel GUERRA-Morfin has violated Title 21, United States Code, Sections 846 and 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GUERRA-Morfin with drug trafficking offenses, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge my training and experience, my review of audio and video recordings, my consultation with other Spanish-speaking law enforcement officers who also reviewed audio and video recordings, my discussions with DEA undercover officers ("UC-1" and "UC-2"), information provided to me by other law enforcement agents, and other evidence. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

4. In summary, on or about June 13, 2024, an undercover law enforcement officer ("UC-1") began communicating with a known narcotics trafficker (Individual A) regarding a transaction for a kilogram of cocaine. During their communications, Individual A agreed that he would sell UC-1 one kilogram of cocaine for $15,000, and told UC-1 that s/he would be contacted by one of Individual A's associates (Individual B) in the upcoming days to conduct the transaction.

5. Thereafter, Individual B contacted UC-1 and in turn put UC-1 in touch with GUERRA-Morfin, who ultimately met with UC-1 and another undercover law enforcement officer ("UC-2") in the parking lot of a McDonald's in Chicago on June 17, 2024 and distributed approximately one kilogram of cocaine to the UCs in exchange for $15,000 in an audio and video recorded controlled transaction.

### *Individual A Introduces UC-1 to Individual B*

6. According to UC-1 and preserved WhatsApp text messages and audio communications:[2]

    a. On or about June 13, 2024, at approximately 9:39 a.m., Individual A, using telephone number 52-6731331385 ("Subject Phone 1") texted UC-1 and introduced himself to UC-1 as "Canelo, a friend of Alex." Later that night, Individual

---

[2] The WhatsApp text messages and audio recordings referred to in this affidavit are in Spanish. The translations and transcripts in this affidavit are drafts and are based on preliminary translations by agents with knowledge of the Spanish language, and the Spanish-speaking UC-1's interpretations. Bracketed language refers to my interpretation of the conversations based on my training and experience, and my knowledge of the investigation, and that of the Spanish-speaking agents who translated the recordings.

3

A texted UC-1 "Hey, if there is $15,000, you say how you want us to do it." Based on my knowledge of the investigation, as well as the knowledge of the investigation of other agents, I believe that this message was a reference to Individual A offering to set up a transaction for $15,000 worth of cocaine for UC-1.

  b. The following day, on or about June 14, 2024, at approximately 4:30 p.m., Individual A, using Subject Phone 1, had a recorded WhatsApp call with UC-1. The conversation went as follows:

| | |
|---|---|
| Individual A: | [Voices overlap] [U/I] Ready. Are you ready [for the narcotics transaction] now? |
| UC-1: | Yes, sir. You tell me when you can do it [set up the transaction] |
| Individual A: | [Voices overlap] Okay. Let me, let me call the guy [Individual B] now and I will call you later, okay? |
| UC-1: | Yes, that is fine. Give me a call. |
| Individual A: | Save … save this number. |
| UC-1: | Yes, I saved it already. Alright then. |
| Individual A: | Alright then. |

  c. A few minutes later, at approximately 5:43 p.m., Individual A sent a WhatsApp message to UC-1 that said "+528123714256 ask for Chimulco." UC-1 then called this number and said, "I am calling on behalf of Chimulco . . . I was given your number to . . . give you a call to see if uh… if your guy could serve me [sell me narcotics] here at the windy [in Chicago]." Individual B responded, "Yes, that is fine. Uh, you guys are ready, right? With the document [payment for the narcotics]?"

4

Individual B and UC-1 then confirmed that they would do a narcotics transaction in the following days.

   d. At approximately 8:06 p.m., UC-1 and Individual A resumed their WhatsApp text message conversation. During the conversation, UC-1 said, "I already talked to him [Individual B]." Individual A replied, "Hey, arrange things with him [Individual B], you pay him 15 [$15,000] and if you want more [narcotics]. We see each other later. Let me know." UC-1 responded, "Yes, it's good. We'll ask for more [narcotics] if it's done. I'll let you know."

### *On June 17, 2024, GUERRA-Morfin Distributes Approximately 1.03 Kilograms of Cocaine to UC-1*

  7. According to UC-1 and preserved WhatsApp text messages and audio communications:

   a. On or about Thursday, June 16, 2024, at approximately 5:50 p.m., UC-1 had a recorded telephone conversation with Individual B. During the conversation, UC-1 asked "is your guy [GUERRA-Morfin] able to like at . . . I was going to tell you, I was going to pick up the receipts [payment for narcotics] in the morning, I was going to ask you if he could do it like at noon, at 11:30 [a.m.] or noon. What do you think?" Individual B responded, "That's fine, 11:30 [a.m.] is fine . . . I will send you his number, call him tomorrow or if you want to call him today." UC-1 replied, "Alright then. Yes, send me the number and I might as well call him today."

   b. At approximately 5:55 p.m., Individual B sent a text message to UC-1 containing contact information for a contact named "Gravielillo Chulo" with a

5

telephone number (872) 214-5685 ("Subject Phone 2")—ultimately identified as GUERRA-Morfin.[3]

  c. At approximately 5:55 p.m., UC-1 had a recorded WhatsApp telephone conversation with GUERRA-Morfin, who was using Subject Phone 2. During the call, UC-1 introduced himself by stating, "Hey, I'm calling on behalf of Chimilo." (According to UC-1, the name "Chimilo" was a code that would inform GUERRA-Morfin that UC-1 was the individual that Individual B had introduced to GUERRA-Morfin, and that UC-1 was calling about a potential narcotics transaction.)

  d. UC-1 then stated, "I wanted to see if you could meet me like at twelve [12:00pm] tomorrow?" GUERRA-Morfin replied, "That's fine, let me know." UC-1 asked, "where are you located?" GUERRA-Morfin replied, "by Cicero and Cermak . . . where the Cermak store is, around there." UC-1 then said, "Alright, alright. Okay so, I will call you once I get over there and if you want, I can meet you over by where the restaurants are at." GUERRA-Morfin replied, "Cocula, over here

---

[3] GUERRA-Morfin has been identified as follows: as described below, law enforcement set up a controlled narcotics transaction with GUERRA-Morfin on June 17, 2024, during which GUERRA-Morfin interacted with two UCs in a video recorded meeting. The UCs identified GUERRA-Morfin's driver's license as the person they met with, and other law enforcement officers compared GUERRA-Morfin's physical appearance both during physical surveillance and on recorded video GUERRA-Morfin's Illinois driver's license photograph and confirmed his identity.

Additionally, the UCs spoke with GUERRA-Morfin during the controlled transaction and confirmed that the voice on Subject Phone 2 was GUERRA-Morfin's voice.

by Cermak and Cicero."[4] UC-1 and GUERRA-Morfin agreed that UC-1 would call GUERRA-Morfin when UC-1 arrived at the meet location.

    e.  At approximately 6:01 p.m., UC-1 and Individual B exchanged a series of text messages in which UC-1 confirmed with Individual B that UC-1 was going to meet with GUERRA-Morfin at noon, and UC-1 planned to call GUERRA-Morfin before they met.

  8.  The following day, June 17, 2024, at approximately 10:40 a.m., UC-1 sent a WhatsApp message to GUERRA-Morfin which stated, "Good morning. Can you see me at Harlem and Cermak at MC Donald? There is in the cocula when you cross this ugly office."

  9.  At approximately 10:30 a.m., law enforcement established surveillance in and around the McDonald's parking lot located at 7181 Cermak Road Berwyn, IL (the "McDonald's"), and on GUERRA-Morfin's residence located at 1926 S. 48th Ct. Cicero, IL (the "Residence").[5] Law enforcement equipped UC-1 and another undercover law enforcement officer (UC-2) with covert audio and video recording devices and provided them with $15,000 in controlled funds to complete the transaction. The UCs then departed for the McDonald's parking lot at approximately 11:38 a.m., arriving several minutes later.

---

[4] Based on my knowledge of the investigation and a publicly available information, Cocula is a restaurant located at 4836 W. Cermak Road, on the corner of W. Cermak Road and S. Cicero Avenue.

[5] As detailed below, law enforcement officers observed GUERRA-Morfin depart the Residence prior to the June 17, 2024 controlled transaction. Additionally, the car GUERRA-Morfin drove to the controlled transaction is registered in his name with an address of the Residence.

7

10. According to physical surveillance and audio and video recordings:

a. At approximately 11:40 a.m., GUERRA-Morfin exited the Residence and opened the trunk of a white Ford Escape SUV with Illinois registration number EE37809 (the "white Escape"),[6] then closed the trunk and got into the driver's seat and departed the residence.

b. At approximately 11:46 a.m., UC-1 had a recorded WhatsApp call with GUERRA-Morfin and told him that s/he had just arrived at the McDonald's driving in a gray Jeep (the "UCV").

c. A short time later, Individual B called UC-1 to confirm that the deal was going smoothly.

d. At approximately 11:52 a.m., GUERRA-Morfin entered the McDonald's parking lot driving the white Escape and parked near the UCV.

e. At approximately 11:54 a.m., GUERRA-Morfin exited the driver's seat of the white Escape, opened the trunk, grabbed a white plastic 'Target' bag, then walked to UCV and got into the back seat. A photograph of GUERRA-Morfin during the controlled transaction is below:

---

[6] According to records from the Illinois Secretary of State, the white Escape is registered to Gabriel Guerra-Morfin at 1926 S. 48th CT. Apt. 2 Cicero, IL 60804 (the Residence).



11. According to the UCs and the audio recording, while GUERRA-Morfin was in the UCV, all three individuals had a conversation with Individual B on speakerphone, which went as follows:

| | |
|---|---|
| GUERRA-MORFIN: | Alright then. |
| UC-1: | Let's see how this thing is coming in. [Shuffling sounds] See if it comes … you are telling me you only had two [kilograms of cocaine] left, right? |
| Individual B: | No, that is the last one. I am done. |
| UC-1: | Give him the ticket [payment for the narcotics]. And we had agreed on fifteen [$15,000], right? |
| UC-2: | Hey, cousin. |
| Individual B: | Yes [Voices overlap] [U/I]. |
| GUERRA-MORFIN: | [U/I] I will check it. |
| UC-1: | You let me know when more [narcotics] come in, sir. |
| UC-2: | [Voices overlap] It is all there. |

9

| | |
|---|---|
| UC-1: | Check the tickets [count the money]. Uh, like I told you, I have some Black guys [new customers] that live here in uh, in Michigan and uh, and uh… |
| GUERRA-MORFIN: | It is [U/I]. |
| UC-1: | Is it okay? |
| GUERRA-MORFIN: | Yeah. |
| UC-1: | Yes. Okay, that is fine. Look, tell him, sir. |
| GUERRA-MORFIN: | Hey, buddy. |
| UC-2: | Give it to me, cousin. |
| GUERRA-MORFIN: | That is good there, that is good there. Alright then. Oops, I'm sorry. Okay. |
| UC-1: | Okay, that's okay. |
| GUERRA-MORFIN: | Okay. |
| UC-1: | Okay, until next time. Okay. |
| Individual B: | Look, listen, buddy. Like I told you the other day. On my, on my end [U/I] arrive, that is the last one [kilogram of cocaine] I have left but I have someone else I can grab from. If you need any, let me know and I will talk to him and I will grab them and I will have them ready for you. |
| UC-1: | Okay, that is fine, sir. |
| Individual B: | Alright then. |
| UC-1: | Okay, let me hang up so I can drive properly. I will call you later. |
| Individual B: | Alright then, thank you. |
| UC-1: | Okay, thank you. |

| | |
|---|---|
| Individual B: | Be well, you are welcome. |
| UC-1: | Okay. Alright. |

12. Based on my training and experience and my knowledge of the investigation, as well as the training and experience and knowledge of the investigation of other agents, I believe that in this conversation, (i) during the phone conversation in the UCV, Individual B and GUERRA-Morfin were confirming that the UCs were satisfied with the cocaine, (ii) Individual B told the UCs that he was running low on narcotics, (iii) the UCs asked Individual B for more narcotics and indicated that they had potential customers in Michigan, and (iv) Individual B confirmed that he would try to obtain more narcotics.

13. According to the UCs, physical surveillance, and video recordings inside the car, GUERRA-Morfin gave the UCs the white plastic 'Target' bag in exchange for a bundle of cash consisting of the $15,000, then exited the UCV and returned to the white Escape, where he first opened the glove compartment in the front passenger seat, then placed the bundle of money below the seat instead. GUERRA-Morfin then drove away in the white Escape.

14. The UCs then reunited with law enforcement who took custody of the 'Target" bag. Inside the bag, law enforcement recovered a bricked shaped object wrapped in clear shrink-wrap with "#5 Chi" written in black sharpie. According to test results from the DEA Central Laboratory, the contents of the brick shaped object tested positive for cocaine and weighed approximately 1,003 grams.

15. Accordingly, there is probable cause to believe that between on or about June 13, 2024 and on or about June 17, 2024, Gabriel GUERRA-Morfin conspired with Individual A and Individual B to knowingly distribute 500 or more grams of cocaine, and on or about June 17, 2024, GUERRA-Morfin knowingly distributed 500 or more grams of cocaine.

FURTHER AFFIANT SAYETH NOT.

*James J. Lee*
JAMES J. LEE
Special Agent, Drug Enforcement Administration

SWORN TO AND AFFIRMED by telephone May 21, 2025.

*Jeannice W. Appo*
Honorable Jeannice W. Appenteng
United States Magistrate Judge

12